## PUTNAM v. SWINNEY.

1. **Statute of Frauds:** PROMISE TO PAY ANOTHER'S DEBT: NO APPLICATION WHERE PROMISE EXECUTED. Where defendant had funds belonging to E., who was president of a bank, and the bank afterwards failed, owing the defendant, and E. directed defendant to apply the funds in his hands upon the bank's debt to him, which he did, *held* that plaintiff, who claimed a right to this fund under E., could not recover it from the defendant upon the ground that the latter held it under an unwritten agreement of E. to pay the debt of the bank. The statute of frauds relates only to the evidence of such promises, and does not render invalid their voluntary execution.

2. **Bankruptcy:** FRAUDULENT PREFERENCES: JURISDICTION OF STATE COURTS. State courts have no jurisdiction to inquire into and set aside fraudulent preferences under the bankrupt laws of the United States. *Hecht v. Springstead*, 51 Iowa, 502, and *Brewster v. Dryden*, 53 Id., 657, followed.

*Appeal from Davis Circuit Court.*

THURSDAY, APRIL 24.

THIS is an action at law to recover a claim of $260, which it is alleged was owing by the defendant to one J. W. Ellis, who assigned the claim to plaintiff. There was an answer taking issue with the averments of the petition, and setting up special defenses. There was a demurrer to certain counts of the answer, which was sustained. A jury was waived, and a trial was had by the court, and a judgment was rendered for the plaintiff. Defendant appeals.

*J. S. Carruthers* and *Jones & Steele*, for appellant.

*Payne & Eichelberger*, for appellee.

ROTHROCK, CH. J.—I. The grounds upon which the plaintiff in his petition claims the right to recover are, in substance, as follows: He avers that in July, 1876, J. W. Ellis was the owner of certain cattle, and that the defendant, Swinney, shipped the cattle to Chicago for Ellis, and sold them there, and received the sum of $260 as the net proceeds of the sale; that

at that time Ellis was indebted to Elizabeth Bell in the sum of $100, and that the defendant then and there agreed to pay her the said sum from the money in his hands belonging to Ellis; that the plaintiff was a surety for Ellis, and on August 1, 1876, directed, and said Swinney agreed, that the balance of the money in his hands should be paid to the plaintiff, and that plaintiff has paid as surety for Ellis an amount much larger than the balance of the proceeds of the sale of the cattle; that Elizabeth Bell has assigned to plaintiff her claim against the defendant. Judgment was demanded for the sum of $260 and interest.

It is further averred, as an alternative claim, that in June, 1881, Ellis assigned in writing the said amount for said cattle to the plaintiff.

The defendant denied that he was indebted to the plaintiff, and denied that plaintiff was the owner of said claim.

The fifth count of the answer alleges, in substance, that prior to September 22, 1876, J. W. Ellis was president of the F. & M. Bank, a corporation doing a banking business in Bloomfield, Iowa, and was its active manager; that Swinney had funds on deposit there September 15, 1876; that he then heard unfavorable rumors as to the solvency of the bank, and determined to withdraw his balance; that Ellis then told him that he would be personally responsible for the funds Swinney had on deposit, if he would leave them in the bank, which he thereupon did, and continued his account until September 22, when the bank suspended, at which time it owed Swinney $516.43. It is further alleged that afterwards, on October 2, 1876, Ellis sent eight head of cattle to Chicago, to be sold by Swinney on Ellis' account; that, after deducting expenses, there was due Ellis on said cattle $262, and on October 10, 1876, Ellis authorized and directed Swinney to keep and retain this money on account of the loss he had sustained by reason of the failure of said bank; and that it was expressly agreed that Swinney should "prove up his claim against the bank for the full amount, and collect all he could of the assets

thereof, and, in the event said bank failed to pay defendant in full, with interest," he should apply the cattle money on such debt. It is then alleged that he did prove up the claim, and received from the assignee of said bank $193.43, and he claims to apply the cattle money on the remainder of the debt.

The foregoing statement of the substance of the fifth count of the answer is nearly in the exact language of the statement made by counsel for appellee in their argument. The demurrer was sustained upon the ground that the agreement therein set forth was an oral promise to answer for the debt of the bank, and within the statute of frauds. The third clause of section 3663 of the Code provides that no evidence, unless it be in writing, is competent to prove a contract "wherein one person promises to answer for the debt, default or miscarriage of another."

1. STATUTE of frauds: promise to pay another's debt: no application to executed promise.

If this were an action in which Swinney was seeking to recover of Ellis, upon his alleged promise to be individually responsible if Swinney would allow this money to remain on deposit in the bank, the question would be, could he under the statute prove that promise by parol? Whether such a. promise is within the statute of frauds we need not determine,. because, by the pleading, the defendant does not seek to recover upon the promise. According to the averments of the answer, Ellis not only promised, but he performed. When he authorized the defendant to retain the proceeds of the sale of the cattle, and apply them upon the debt due to defendant; from the bank, his promise before made was performed, just the same as though Ellis had, as an independant transaction, handed over to Swinney $260 for that purpose. It certainly cannot be claimed that Ellis could recover the money back. from the defendant, and, if he could not, he cannot confer any greater right upon an assignee. Ellis had the undoubted: right to dispose of his money in this way, and no one could, complain except creditors, and then only upon the ground of fraud.

It seems to us that the whole controversy in this case turns

Putnam v. Swinney.

upon the question whether the plaintiff and Mrs. Bell acquired any valid right to this fund before Ellis agreed to allow the defendant to apply it upon the bank debt. If they did acquire such right, they are entitled to recover, notwithstanding the promise made by Ellis to the defendant may not be within the statute of frauds, because that promise had no reference to any particular fund from which Ellis should discharge his liability, and he could dispose of his cattle, or the proceeds of their sale, as he chose.

It is claimed that we should presume that the court found that the plaintiff's right to the fund. attached before the arrangement was made by which the defendant should apply the money upon the bank debt. But the court, having sustained the demurrer to this count of the answer, refused to hear any evidence theron, and we think, so far as the record shows anything on the point, it appears that no right of the plaintiff or of Mrs. Bell attached prior to the arrangement between Ellis and the defendant.

II. The eighth count of the answer sets up, in substance, that Ellis was adjudged a bankrupt in November, 1876, on a petition filed by his creditors October 31, 1876; that Ellis was insolvent when Swinney shipped his cattle, and at the time he assigned his claim against Swinney to Putnam and Bell; that they knew he was insolvent, and that such arrangement was made with a view to giving them a fraudulent preference, contrary to the bankrupt laws of the United States. To this count the plaintiff demurred upon the ground that state courts have no jurisdiction to inquire into and set aside fraudulent preferences under the bankrupt laws of the United States. The demurrer was sustained. The ruling was correct, and is fully supported by the cases of *Hecht v. Springstead*, 51 Iowa, 502, and *Brewster v. Dryden*, 53 Id., 657.

2. BANK-RUPTCY: fraudulent preferences: jurisdiction of state courts.

For the error in sustaining the demurrer to the fifth count of the answer, the judgment of the court below is reversed, and the cause remanded for a new trial.        REVERSED.